**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**
**DIVISION**

| | |
|---|---|
| Pyramid Diversified Services, Inc. d/b/a Simple HR, | ) ) ) |
| Plaintiffs, | ) ) |
| vs. | ) Case No.: ) |
| Providence Property & Casualty Insurance Company, and PACA, Inc., | ) ) ) |
| Defendants. | ) |

**FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff Pyramid Diversified Services, Inc. d/b/a Simple HR, files this First Amended Complaint against Defendants Providence Property & Casualty Insurance Company and PACA Incorporated, and states:

**PARTIES**

1. **Simple HR**. Plaintiff Pyramid Diversified Service, Inc., doing business as Simple HR ("SHR") is a Florida corporation with its principal place of business in Destin, Florida. Simple HR is a citizen of Florida.

2. **PPC**. Defendant Providence Property & Casualty Insurance Company ("PPC") is an Oklahoma corporation and Oklahoma licensed insurance company. PPC maintains what it describes as its "Home" office in Oklahoma. PPC has and continues to do substantial insurance business in the state of Florida and is subject to the authority of the Florida Insurance Commissioner. PPC has substantial contacts with the State and this District.

3. **PACA.** Defendant PACA, Inc. ("PACA") is a corporation domiciled in Alabama with its principal offices located in Alexander City, Alabama. PACA is a citizen of Alabama.

PACA is a "professional employer organization" ("PEO") and has substantial and material contacts with the state of Florida and this District.

**JURISDICTION AND VENUE**

**Jurisdiction**.

4.  The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332, as the amount in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs. There is complete diversity of citizenship between plaintiff and the defendants.

**Venue**.

5.  Venue is proper in this district and division under 28 U.S.C. § 1391, as a substantial part of the events, agreements, transfers, coverage, and actions giving rise to the instant action occurred in this District.

**Facts Common To and Incorporated in All Counts**

**6.**  SHR is a PEO and provides employee-related services to various businesses in several states. Among the services that SHR offers is providing employees mandatory workers' compensation coverage ("WCC") through a licensed insurance carrier.

7. SHR originally provided WCC to its clients through a conduit organization or program managed by PACA or its affiliates which acted in many forms as the direct agent of PPC. By way of the arrangement between PACA and PPC, a third party PEO could obtain primary insurance coverage from PPC without directly contracting with the carrier. PACA is not an authorized insurance carrier.  Upon information and belief, PACA would solicit potential accounts, negotiate terms and collect premium on behalf of PPC. SHR received WCC via the PACA conduit from 2003 through the end of 2004.

8. Although investigation has revealed some information as to workings and machinations, SHR has never been made privy to the agreement(s) governing the relationship between Defendants. Nonetheless, PACA negotiated the WCC terms with PPC, determined how much to charge SHR for the WCC provided to SHR's employees by PPC, PACA received payments from SHR and PACA transmitted a portion of said payments to PPC as premium for the WCC. At all times material PACA appeared to act as a secondary market agent by and on behalf of PPC although such has been expressly disclaimed by PPC.

**Loans To PACA**

9. On or about January 3, 2003, PACA solicited SHR for a loan of monies and presented a written agreement entitled "Surplus Loan Agreement" ("SLA"). A true and correct copy of the SLA is attached hereto and made a part hereof as Exhibit A.

10. Pursuant to the SLA, PACA is designated as the "BORROWER" and SHR as the "LENDER." SHR was required by the express terms of the SLA to loan the sum of $823,903.20 to PACA within "three (3) business days after execution of this Agreement." SHR refused to provide such a sum within three business days. Instead, SHR loaned PACA a total of $823,903.20 in serial installments over approximately an eighteen month period.

11. The SLA enumerates a series of described uses to which the loan proceeds are to be dedicated designed to benefit PACA (Borrower) or an insurance carrier with whom it was affiliated.

12. The SLA provides that PACA shall repay SHR monies borrowed pursuant to the Agreement (referencing the loan of $823,903.20) "over eighteen (18) months or

according to Article Three below and pursuant to any Addendums below and to the terms of a surplus note made by PPC or another carrier. . . ."

13. Article Three provides that PACA shall repay SHR when and as PACA receives principal and interest "on the aforementioned surplus note issued . . . to BORROWER [PACA]."

14. Eighteen months have transpired since SHR provided its final loan installment and PACA has failed to repay the first dollar of such loans.

15. Unknown to SHR at the time, the SLA incorporated language verbatim that PPC employed to extract "surplus" loans from other insureds. Notably though, these PPC loan agreements do not contain a specific repayment covenant which establishes a time certain for loan repayment as discussed *supra*. *See* Surplus Loan Agreement relating to Peoplease Corporation attached hereto and made part hereof by reference as Exhibit B.

16. PACA has subsequently acknowledged these loans and provided internal accounting documentation confirming its receipt of such loans by date and amount.

17. Upon information and belief the funds SHR provided to PACA via the Surplus Loan(s) were used to fund one or more Surplus Loan(s) from PACA and/or its parent entity, Skilstaf, Inc., to PPC through its parent entity, Providence Holdings, Inc. ("PHI"). The Surplus Loan Agreement(s) between PACA/Skilstaf and PPC/PHI provided for repayment of the loan funds "when and as interest and principal are received" on notes issued by PPC to PHI.

**SHR Contracts Directly With PPC**

18. After SHR noticed the termination of participation in the PACA insurance conduit effective December 31, 2004, PPC offered to provide direct workers' compensation

insurance. Accordingly, by separate annual insurance contracts PPC acted as the workers' compensation carrier for SHR from January 1, 2005, through December 31, 2007.

19. Each such contract was proposed to SHR in Florida, consented to (as described) by SHR in Florida, and covered Florida domiciled employees. Each such insurance contract purports to be governed by the laws of the state of Oklahoma. Notably, SHR has never done business in the state of Oklahoma where PPC is domiciled or in the state of Texas where PPC maintains one of its several offices.

20. The material annual written insurance contracts between PPC and SHR referenced above are attached hereto and made a part hereof as respective Exhibit C (2005), Exhibit D (2006) and Exhibit E (2007).

21. The Policies provided for an express per claim "deductible" of $250,000 in 2005; $500,000 in 2006; and $500,000 in 2007. PPC covenants to provide coverage on every claim for payments in excess of the designated deductible up to $1,000,000 by PPC. This is *raison d'etre* for the purchase of the workers' compensation coverage for each policy period.

**The Claims Collateral Account**

22.  The Policies required the deposit of a "Claims Collateral" account with PPC. The sum of $628,502.26 was placed on deposit with

PPC during the year 2005 as the Claims Collateral Account of SHR. Notably, this sum not only satisfied, but substantially exceeded the maximum Collateral Claims Account of $250,000 PPC called for in the 2005 Policy.

23. PPC told SHR it held an account representing Claims Collateral belonging to SHR. In the second year of this insurance relationship, PPC expressly acknowledged on

December 14, 2005, that it held the sum of $628,502.26 as SHR's Claims Collateral Account "We [PPC] currently hold $628,205 in Claims Collateral." *See* Exhibit D at 4 of 13.

24. PPC's "Proposal" dated December 4, 2006, indicated that the Claims Collateral Account anticipated for SHR may be as much as $700,000. However, that statement is followed by this proviso: "We will not request any additional Claims Collateral at this time." *See* Exhibit E at 3 of 14.

25. In August 2005, PPC and PHI converted the surplus certificates held by PHI from loans to paid in capital, thereby completely satisfying the obligation to provide payment of principal and interest on such certificates. The surplus certificates from PPC to PHI were cancelled effective September 30, 2005.

**Uncertainty and Bad Faith Refusals**

**26.** In late 2007, SHR timely notified PPC that it had obtained alternative insurance coverage for the calendar year 2008 from another carrier.

27. Inasmuch as the claims made under the Policies were significantly winding down, SHR requested that PPC disclose how it intended to apply SHR's Claims Collateral Account to the remaining open claims. Notwithstanding its express representations over the years, PPC denied that SHR ever had a Claims Collateral Account and based on that allegation has refused to discuss how the $628,205,000 Account will be applied.

**The PACA Loans**

28. Further, SHR made inquiries of PACA regarding when its loans would be repaid inasmuch as eighteen months had passed since the last loan installment was provided by SHR in August of 2004. PACA represented that the loan proceeds from SHR had been

provided to PPC to supply the required surplus, indicating that PPC was responsible for loan repayment.

29. Notwithstanding that PACA was responsible for repayment of the loan, SHR made inquiry of PPC and was informed that PPC disclaimed any knowledge of a loan between SHR and PACA . PPC stated that no such designated loan amounts were ever forwarded to PPC or its affiliates.

**The Scheme Underlying Surplus Loans**

30.  SHR is intensely concerned with respect to the repayment of its loans to PACA and the possible receipt of such monies by PPC. SHR's pre-suit investigation has not revealed a single instance where a direct or indirect insured "lender" has been repaid or credited monies borrowed under the auspices of some alleged "surplus note" with respect to PPC, its affiliates and agents. On occasion, SHR has discovered that such surplus loans can involve incredibly large amounts of money.

31. It appears that PPC, and PACA while acting on behalf of PPC, routinely demanded very substantial "surplus loans" from prospective insureds. Various reasons to substantiate the need for such loans were represented, with regulatory "surplus" requirements being chief among them.

32. Upon information and belief, these alleged circumstances are never documented or confirmed to the insured lender. Moreover, it appears that neither PPC nor any other person involved or related to these "loans" ever issues an actual "surplus note" in favor of the original lender. Instead, such "loans" are funneled through Providence Holdings, Inc. ("PHI"), PPC's parent company. PHI never issues a surplus note because it is not required to hold any "surplus."

33. PHI then gives the money lent to PPC who issues some form of a debenture or other legal instrument in favor of PHI. The Surplus Debenture prepared by PPC stipulates that it cannot repay any "loans" to PHI unless its "surplus" constitutes a very substantial amount which PHI and PPC know will likely not be achieved within a reasonable amount of time.

34. After PHI and PPC collectively select the "surplus" at an amount unlikely to require repayment, PPC petitions the Oklahoma Insurance Commissioner for "approval" of the conditions set forth in the Surplus Debenture. State approval is readily forthcoming because the surplus level designated in the Surplus Debenture is at such a substantial level that "repayment" poses no practical risk of insolvency or receivership to state regulators.

35. After a short, but an appropriately convincing period of time to legitimatize the illusion of a "loan," the Surplus Debentures are cancelled and converted to "paid-in" capital. PHI then receives "preferred stock" from its subsidiary PPC and the transaction is over.

36. Upon information and belief, a surplus note is never issued or provided to the original lender and the insured Lender is never notified of the issuance or terms of the Surplus Debenture and its subsequent cancellation.

**Claims Adjudication**

37. At least as to a portion of the policy year 2005, PPC employed a third party administrator to adjust claims made under its respective policies. Upon information and belief, this third party administrator was dismissed and PPC directly handled the administration of claims.

38. PPC is still handling a small number of what are generally referred to as "winding-down" or "run-off" claims relative to SHR's coverage periods.

39. For months, SHR has sought accurate information from Defendants and some informal mutual resolution to the material issues which underpin this controversy. At this juncture, not only has SHR been rebuffed, if not hoodwinked, but it seems manifestly certain that the Defendants, singularly or collectively, intend to retain SHR's monies in perpetuity.

40. SHR has no other remedy at this juncture except to bring this action. SHR and the Defendants are in the midst of a real and substantial case and controversy which can only be resolved and adjudicated by this Court.

41. SHR is in substantial doubt as to its rights under the relationships described herein and gravely concerned about the present accounting of its assets in control of Defendants and the ultimate and permanent loss of the same.

42. All conditions precedent to bringing this action are or will shortly be satisfied.

43. **Pleading In The Alternative:** SHR advises the Court that in accordance with the adjective law governing civil actions certain of its counts are stated in the alternative.

44. **Demand For Jury Trial:** SHR requests a trial by jury on all matters triable by law as such. This specifically includes any material facts in dispute which relate to SHR's cause of action seeking Declaratory Judgment.

## COUNT I: BREACH OF CONTRACT

45. All allegations above have been incorporated by reference in this Count I and all subsequent counts alleged herein.

46. PPC has breached its 2005, 2006, and 2007 Policies with SHR by denying the existence of SHR's Claims Collateral Account, which was admitted as satisfied in all material coverage periods.

47. PPC has breached its Policies by refusing, under the attendant circumstances to acknowledge, as well as inform SHR as to how it intends to apply or refund SHR's Claims Collateral Account.

48. SHR has been damaged as a result of such breaches and demands judgment against PPC.

WHEREFORE, Plaintiff demands judgment against PPC for all damages allowed by law together with prejudgment interest, attorney's fees and any further relief which this Court may deem just and appropriate. The Plaintiff demands a trial by jury of all issues triable as of right by jury.

**COUNT II: VIOLATION OF COVENANT OF GOOD FAITH**

49. Paragraphs 1-48 are incorporated by reference as if fully stated herein.

50. In light of the allegations of fact and breaches alleged above. PPC has not only committed express breaches of its Policies, but has used its position, power, and claimed discretion to violate the covenant of good faith and fair dealing which underlies its Policies and obligations to SHR.

51. SHR has been damaged as a result of such breach and demands judgment against PPC.

WHEREFORE, Plaintiff demands judgment against PPC for all damages allowed by law together with prejudgment interest, attorney's fees and any further relief which this Court

may deem just and appropriate. The Plaintiff demands a trial by jury of all issues triable as of right by jury.

**COUNT III: CONVERSION**

52. PPC has repeatedly acknowledged to SHR that it is in possession of a substantial sum of specifically identified money held for all intents and purposes in constructive trust for the benefit of SHR.

53. Such funds may not be used or applied, except in specific circumstances and must either being credited or returned intact.

54. After SHR informed PPC that it intended to terminate its insurance relationship, PPC claimed that no such Account in favor of SHR existed.

55. PPC has and continues to maintain unauthorized and improper control and dominion over the specific Account of SHR as described.

56. PPC's action constitutes a conscious and deliberate conversion by deceit and misrepresentation of monies belonging to, and in benefit of, SHR.

57. SHR has been damaged as a result of such breach and demands judgment against PPC.

WHEREFORE, Plaintiff demands judgment against PPC for all damages allowed by law together with prejudgment interest, attorney's fees and any further relief which this Court may deem just and appropriate. The Plaintiff demands a trial by jury of all issues triable as of right by jury.

**COUNT IV: FRAUD IN THE INDUCEMENT**

58. A paramount reason that SHR agreed to enter into the Policies with PPC at issue herein was because of PPC's express acknowledgement that it held and was in

undeniable receipt of a substantial sum of money credited to SHR and correspondingly satisfied any Claims Collateral Account obligation SHR may have under such Policies.

59. PPC has disclaimed the possession of any such Account in favor of SHR.

60. PPC knew at all times material hereto that its express representations to SHR were material to SHR and false.

61. PPC knew and intended SHR to absolutely and justifiably rely on such representations in making its decision to contract with PPC for workers' compensation insurance.

62. But for such misrepresentations SHR would have sought a contractual relationship with another insurer.

63. SHR seeks the recission of such Policies or in the alternative seeks substantial damages suffered as a result of PPC's conduct and demands judgment thereon.

WHEREFORE, Plaintiff demands judgment against PPC for all damages allowed by law together with prejudgment interest, attorney's fees and any further relief which this Court may deem just and appropriate. The Plaintiff demands a trial by jury of all issues triable as of right by jury.

**COUNT V: COMMON LAW FRAUD**

64. Additional numbered paragraphs 58-63 are incorporated by reference as if fully stated herein.

65. PPC directly or through its agents engaged in an inveterate and systematic course of conduct to obtain monies under the pretense of a "loan" which it or its agents never intend to repay.

66. On numerous occasions, PPC has obtained the direct benefits of monies extracted from its insureds under the guise of a loan to assist and benefit the surplus requirements which PPC is allegedly subject to by regulation. SHR relied on such false statements of intention to repay and need for such sums.

67. When such loans are solicited there is no intention on the part of PPC or its agent to ever repay such loans. Instead, through a series of common and systematic machinations, such "loans" are first rendered by artificial condition as impossible for repayment. Subsequent to that action, the substance of the loans are converted to paid-in capital all without ever informing the original lender that such conversion was originally intended and inevitable.

68. The subject loans act as a device to collect what amounts to nothing more than unauthorized and undisclosed income. without imposition of federal or state tax as the case may be. This course of conduct is not an isolated or occasional transaction but a deliberate and repeated course of conduct which acts to convert millions of dollars of income provided by unknowing third parties into capital contributions.

69. PPC through its actions and agents engaged in the solicitation and receipt of monies from persons, including SHR, under the guise of a loan without any original intention to ever repay the same. PACA acted as the agent or unwitting conduit to enable PPC to obtain the funds loaned by SHR to PACA, so that PPC's conduct constitutes fraud or a conspiracy to commit fraud. .

70. SHR has been damaged by this course of conduct and inveterate business practice of PPC and demands judgment thereon. The damages suffered are not related to any contractual damages alleged herein related to the Claims Collateral Account or

overcharges as stated. The subject damage is independent of and separate of the subject Policies inasmuch as the conduct alleged induces one to separate from funds under completely false pretenses and representations.

WHEREFORE, Plaintiff demands judgment against PPC for all damages allowed by law together with prejudgment interest, attorney's fees and any further relief which this Court may deem just and appropriate. The Plaintiff demands a trial by jury of all issues triable as of right by jury.

**COUNT VI: VIOLATION FLA. STAT. § 517.301**

71. Additional numbered paragraphs 87-102 are incorporated by reference as if fully stated herein.

72. The "surplus loans" solicited by PPC and its agents are touted to provide an economic benefit to the lender, including SHR, in the form of obtaining insurance essential to the conduct of business and for the common benefits associated with business loans.

73. The described practice operates as a fraud and is peppered with knowing and intentional misrepresentations and omissions of material facts upon which the lender relies.

74. SHR was subjected to the fraud associated with such a transactional loan by PPC or an agent acting on behalf of PPC.

75. SHR has been injured by such conduct which has been accentuated as the Defendants have jockeyed to cloud the matter of the loan and mislead SHR as to the location of its Claims Collateral and Surplus Loan funds.

76. SHR has been damaged by this course of conduct and demands all damages provided by statute.

WHEREFORE, Plaintiff demands judgment against PPC for all damages allowed by law together with prejudgment interest, attorney's fees and any further relief which this Court may deem just and appropriate. The Plaintiff demands a trial by jury of all issues triable as of right by jury.

**COUNT VII: DECLARATORY JUDGMENT**

77. Pursuant to 28 U.S.C. § 2201, SHR petitions this Court to grant declaratory judgment in favor of SHR as prayed for below and to provide such other equitable and legal relief as is appropriate.

78.     SHR prays for the following adjudications and relief.

   a.    A. declaration that SHR loaned PACA the amount of $823, 903.20 which is now due and owing by presentment and demand either under the terms of the SLA inasmuch as the time for payment has arrived and demand has been made or under the common law in that more than a reasonable amount of time for repayment has passed and such loans are now due for repayment.

   b.    In the alternative, declare that PACA at all times material was acting directly on behalf of PPC and that if such loans were forwarded to PPC by said agent that PPC be required to repay such loan amounts or be required to credit any monies it claims due from SHR, penny for penny, in favor of the total loan amount.

   c.    Declare that PPC holds monies belonging to SHR in the amount of $628,502.26 as a Collateral Claims Account and enter judgment requiring that PPC apply such monies as a direct credit against any monies PPC lawfully claims due from SHR, penny for penny, and that any monies not so credited be promptly remitted to SHR.

d.     Declare that PPC has no right or authority to demand that SHR place any further monies on Collateral Claims Account inasmuch as PPC has acknowledged the sufficiency of the present sums on account, has acted in such manner as to waive any such claimed right or authority, and is equitably estopped from any such demands based on course of conduct with respect to SHR.

e.     Make such other declarations as may be become necessary and apparent as SHR through discovery uncovers the truth with respect to the matters referenced herein.

**COUNT IX: BREACH OF LOAN AGREEMENT**

79. PACA has failed to timely repay a loan provided by SHR in accordance with the SLA.

80. The sum due and owing from PACA is $823,903.20, plus interest.

81. SHR demands judgment against PACA in the amount of $823,903.20.

WHEREFORE, Plaintiff demands judgment against PACA for all damages allowed by law together with prejudgment interest, attorney's fees and any further relief which this Court may deem just and appropriate. The Plaintiff demands a trial by jury of all issues triable as of right by jury.

/s/ Robert C. Byerts
Myers & Fuller, P.A.
2822 Remington Green Circle
Tallahassee, Florida 32308
(850)878-6404 tel.
(850)942-4869 fax
rbyerts@dealerlawyer.com

and

Kenneth A. Tillotson, OBA No. 19237
Phillips Murrah P.C.
Corporate Tower, Thirteenth Floor

        101 N. Robinson
        Oklahoma City, OK 73102
        Telephone: (405) 235-4100
        Facsimile: (405) 235-4133
        katillotson@phillipsmurrah.com

        **Attorneys for Plaintiff,**
            **Pyramid Diversified Services, Inc**