**CASE NOs. CIV-09-0622-HE and CIV-12-00457-HE**
_____

**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA**
_____

| | |
|---|---|
| **PYRAMID DIVERSIFIED SERVICES, INC.,**<br>        **Plaintiff,**<br><br>        v.<br><br>**PROVIDENCE PROPERTY & CASUALTY COMPANY, ET AL.,**<br>        **Defendants.** | **STATE OF OKLAHOMA,** _ex rel._**, JOHN DOAK, INSURANCE COMMISSIONER, AS RECEIVER FOR PARK AVENUE PROPERTY AND CASUALTY INSURANCE COMPANY,**<br>        **Plaintiff,**<br><br>        v.<br><br>**PYRAMID DIVERSIFIED SERVICES, INC..,**<br>        **Defendants.** |

_____

**MOTION FOR SUMMARY JUDGMENT
BY THE STATE OF OKLAHOMA,** _ex rel._ **JOHN DOAK,
INSURANCE COMMISSIONER, AS RECEIVER FOR
PARK AVENUE PROPERTY AND CASUALTY INSURANCE COMPANY**
_____

**November 19, 2012**

**John M. O'Connor, OBA No. 6741
Patrick H. Kernan, OBA No. 4983
Gregory P. Reilly, OBA No. 22284
NEWTON, O'CONNOR, TURNER & KETCHUM
A PROFESSIONAL CORPORATION
2700 Bank of America Center
15 West 6th Street
Tulsa, OK  74119-5423
(918) 587-0101/(918) 587-0102 Facsimile
ATTORNEYS FOR STATE OF OKLAHOMA,** _ex
rel._ **JOHN DOAK, INSURANCE COMMISSIONER**

# TABLE OF CONTENTS

TABLE OF CONTENTS ..................................................................................................... i

INDEX OF AUTHORITIES ............................................................................................. ii

INTRODUCTION ............................................................................................................ 1

STATEMENT OF UNDISPUTED MATERIAL FACTS ...................................................... 3

    THE PARTIES TO THE PRESENT DISPUTE ......................................................................... 3

    SIMPLE HR'S CONTRACTS WITH PARK AVENUE (2005 – 2007) ..................................... 4

    SIMPLE HR'S PRIOR RELATIONSHIP WITH PACA (2003-2004) .................................... 9

    SIMPLE HR'S OTHER AFFIRMATIVE DEFENSES AND COUNTERCLAIMS ..................... 13

STANDARD OF REVIEW ............................................................................................... 13

ARGUMENTS AND AUTHORITY ................................................................................... 14

    A. THE RECEIVER'S BREACH OF CONTRACT CLAIMS ................................................. 15

    B. SIMPLE HR'S ALLEGED SETOFF .......................................................................... 17

    C. SIMPLE HR'S MISCELLANEOUS COUNTERCLAIMS AND AFFIRMATIVE DEFENSES 22

CONCLUSION ............................................................................................................... 25

CERTIFICATE OF SERVICE ........................................................................................... 27

# TABLE OF AUTHORITIES

## Cases

*Alexander v. Federal Bureau of Investigation,* **186 F.R.D. 137**, 141 (D.D.C. 1999) ....... 23

*Alexander v. Federal Bureau of Investigation,* **186 F.R.D. 148**, 151 (D.D.C. 1999) ....... 23

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505 (1986) .................. 14

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S. Ct. 2548 (1986). ........................ 13

*Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1516  (10ᵗʰ Cir. 1991) 21

*Coen v. SemGroup Energy Partners, G.P., L.L.C.*, 2013 OK CIV APP 75, ¶32 .............. 15

*Digital Design Group, Inc. v. Information Builders, Inc.*, 2001 OK 21, ¶ 33, 24 P.3d 834, 843 .................................................................................................................................. 15

Fed R. Civ. P. 56(e) ........................................................................................................ 14

*Ferrell Constr. Co. v. Russell Creek Coal Co.*, 1982 OK 24, 645 P.2d 1005, 1009) ....... 20

*Matlock v. Texas Life Ins. Co.*, 404 F. Supp. 2d 1307, 1310 (W.D. Okla. 2005). ............ 13

*McKissick v. Yuen*, 618 F.3d 1177, 1186 (10ᵗʰ Cir. 2010) ................................................. 20

*Mitsui & Co. (USA), Inc., v. Puerto Rico Water Resources Auth.,* 93 F.R.D. 62, 66-6 (D.P.R. 181) ............................................................................................................... 23

*Rainey v. American Forest & Paper Ass'n, Inc.,* 26 F.Supp.2d 82, 94-96 (D.D.C. 1998) 24

*Skandia Am. Reinsurance Corp. v. Schenck*, 441 F. Supp. 715, 727-728 (S.D.N.Y. 1977) ............................................................................................................................ 17

*Stewart v. United States*, 993 F. Supp. 840 (W.D. Okla. 1997) ....................................... 14

*United States v. Taylor,* 166 F.R.D. 356 (M.D. N.C. 1996) .............................................. 24

**Statutes**

OKLA. STAT. tit. 36 § 1928 .............................................................................................. 21

OKLA. STAT. tit. 36, § 2010(D)........................................................................................ 17

STAT. tit. 36, § 2010(C) ................................................................................................... 16

**Rules**

FED. R. CIV. P. 56(c)......................................................................................................... 13

Fed. R. Civ. P. 56(e) ......................................................................................................... 13

LCvR56.1 ........................................................................................................................... 1

LCvR56.1(b)....................................................................................................................... 3

Pursuant to FED. R. CIV. P. 56 and. LCvR56.1, the State of Oklahoma, ex rel. John

Doak, Insurance Commissioner, as Receiver for Park Avenue Property & Casualty

Insurance Company (the "Receiver") hereby moves the Court for summary judgment

against Pyramid Diversified Services, d/b/a Simple HR ("Simple HR").   The summary

judgment record herein demonstrates there is no genuine issue as to any material fact on

the claims and defenses between the Receiver and Simple HR, and the Receiver is

entitled to judgment as a matter of law.   Alternatively, the Receiver requests partial

summary judgment on claims and defenses to which there is no genuine dispute to any

material fact, thus narrowing the issues to be resolved at trial.

## INTRODUCTION

This is a contract dispute between the Receiver of an insolvent insurance company

and its customer over amounts the customer has failed to pay in respect to the coverage.

Simple HR is a professional employer organization, or PEO.  Simple HR contracts

with its customers, usually small- to medium-sized businesses with employees, to provide

various employment-related services, such as payroll services and workers' compensation

insurance, in return for a fee.

Simple HR purchased high deductible workers' compensation insurance coverage

for its customers from Park Avenue for policy periods commencing in January 2005 and

running through the end of 2007, through three annual agreements.   Under these

agreements, Park Avenue administered policy obligations, adjusted losses, and made

first-dollar payments to injured workers, healthcare providers, and others arising from

1

workers' compensation claims.

According to the agreements, Simple HR is responsible for premium payments to Park Avenue and agreed to reimburse Park Avenue, up to the deductible amount, for amounts paid by Park Avenue for indemnity payments to injured employees, for loss adjustment expenses, for medical care and therapy expenses, for claim reserves, and for the actuarially calculated "incurred but not yet reported" claims.  Simple HR selected deductible amounts at $250,000 per occurrence and later raised the deductible to $500,000.  Park Avenue invoiced Simple HR for these amounts on a periodic basis, and Simple HR agreed to pay these amounts throughout the term of the relationship.

The Receiver was appointed by the District Court of Oklahoma County to liquidate Park Avenue on November 18, 2009.  The Oklahoma Insurance Commissioner is statutorily directed to serve as the Receiver and is authorized to appoint an Assistant Receiver to manage the liquidation.  The Receiver took possession of the books, records, assets, and operations of Park Avenue immediately upon the entry of the Liquidation Order.

When the Receiver was appointed, the Receiver began paying the disability payments to the injured employees.  Soon thereafter, the system of adjusting the claims and paying the losses and expenses was activated.  State guaranty associations adjust the claims, set the reserves, and pay the claims.  Thereafter, the state guaranty associations make claims for reimbursement from the Receivership estate through the Court supervising the liquidation.

The Receiver discovered Park Avenue was owed over $80,000,000 by up to

twenty-eight PEOs.  Many of the PEOs have gone out of business – some to avoid paying Park Avenue.  The state guaranty associations are looking to the Receiver to reimburse them for millions of dollars in claims payments, much of which is expected to come from collections from PEOs, like Simple HR.

## STATEMENT OF UNDISPUTED MATERIAL FACTS

Pursuant to LCvR56.1(b), *for the purposes of summary judgment only*, the Receiver submits the following concise statement of undisputed material facts which establishes that no *genuine* issue exists and demonstrates the Receiver is entitled to judgment as a matter of law.

### THE PARTIES TO THE PRESENT DISPUTE

1.      Park Avenue Property & Casualty Insurance Company, f/k/a Providence Property & Casualty Insurance Company ("Park Avenue" or "PPC") is an Oklahoma domiciled insurance company that provided large deductible workers' compensation coverage to professional employer organizations ("PEOs") (Ex. 1, Expert Report of Mark D. Tharp ("Tharp Report.") at 8).

2.      On January 30, 2009, Park Avenue (operating under its former name, Providence Property & Casualty Insurance Company) was sold by its sole shareholder, Providence Holdings, Inc., to Park Avenue Insurance, LLC.  (CIV-09-0622-HE Dkt. No. 179-8).   On February 4, 2009, the insurance company was renamed Park Avenue Property & Casualty Insurance Company (Ex. 2, Articles of Incorporation at 4).

3.      On November 18, 2009, the Oklahoma County District Court placed Park Avenue into receivership pursuant to a Consent Order of Liquidation with Finding of

3

Insolvency and Permanent Injunction (Ex. 3).   The court appointed the Oklahoma Insurance Commissioner (Kim Holland at the time) as Receiver, vested her with all powers and authority, express or implied, as set forth in OKLA. STAT. tit. 36, §§ 1901, et al., and with "title to all of the property, contracts, and rights of action and all of the books and records of the insurer wherever located." (*Id.* at 3).  The court approved the appointment of Mark Tharp as assistant receiver (*Id.* at 4).

4.     Simple HR is a Florida corporation that conducted business as a PEO (Ex.4, Deposition of Will Lindsley ("Lindsley Depo.") at 7:9-13).  Bill S. Lindsley is the vice president of Simple HR (*Id.* at 6:9-13).  Mr. Lindsley was designated as the corporate representative of Simple HR in this litigation (*Id.* at 5:14-16).

### SIMPLE HR'S CONTRACTS WITH PARK AVENUE (2005-2007)

5.     Simple HR contracted with Park Avenue for the provision of workers' compensation insurance for calendar years 2005, 2006, and 2007 (Ex. 5, November 23, 2004, Workers' Compensation Proposal – Revised letter agreement ("2005 Agreement"); Ex. 6, December 14, 2005, Workers' Compensation Renewal Proposal – Option 2 letter agreement ("2006 Agreement"); Ex. 7, December 4, 2006, Workers' Compensation Renewal Proposal ("2007 Agreement").

6.     The Agreements are governed by Oklahoma law (*See* Ex. 6, 2006 Agreement at 7; Ex. 7, 2007 Agreement at 7).  For the 2007 Agreement, the parties agreed that any legal proceeding related to the Agreement, "shall be instituted in a federal or state court sitting in Oklahoma County, Oklahoma, which shall be the exclusive

jurisdiction and venue of said legal proceedings" (Ex. 7 at 7). Simple HR is a policy holder subject to personal jurisdiction pursuant to Okla. Stat. tit. 36, § 1902(C)(2).

7.     Under the Agreements, Simple HR periodically provided payment of premium payments on a self-reported basis calculated from the weekly payroll of Simple HR client employees (Exs. 5 at 2; 6 at 2; and 7 at 2). At the end of each policy year, a premium audit was performed to determine whether a premium deficiency or surplus existed and whether an additional payment or a credit was to be applied (See Ex. 8, September 11, 2008 Letter and Final Premium Audit Invoice ("2007 Final Premium Audit")).

8.     Simple HR does not dispute the 2005 or 2006 premium audits were accurate (Ex. 4, Lindsley Depo. 108:19 – 110:9). Simple HR paid all amounts due for premiums for under the 2005 Agreement and the 2006 Agreement.

9.     Park Avenue performed a final premium audit following the policy period from January 1, 2007 through January 1, 2008, and determined an additional **$23,338** was due from Simple HR (Ex. 8, 2007 Final Premium Audit).

10.     Simple HR presented no evidence to dispute that $23,338 is due and payable pursuant to the 2007 Final Premium Audit (Ex. 4, Lindsley Depo. at 109:10 – 111:16).

11.     In addition to premiums due for the coverage provided, Simple HR was responsible for reimbursing Park Avenue for claims liabilities incurred and "incurred

claims development" or "Developed Losses" within the applicable deductible amount (Ex. 5, 2005 Agreement; Ex. 6, 2006 Agreement at 2-3; Ex.7, 2007 Agreement at 3).[1]

12.     Simple HR did not renew its agreement with Park Avenue for the 2008 policy year (Ex. 4, Lindsley Depo. at 43:25-44:2; Ex. 9, December 28, 2007, Letter from Newman to Lancaster).

13.     Park Avenue issued insurance policies, provided insurance coverage, and otherwise fulfilled its obligations to administer and pay claims under the Agreements (Ex. 4, Lindsley Depo. at 118:13-119:7; 120:17-121:6).

14.     Park Avenue invoiced Simple HR for incurred amounts due within the applicable per-claim deductible for workers' compensation claims paid by Park Avenue on a monthly basis (Ex. 1, Tharp Report at 14).   Included with the invoices were cumulative loss runs that showed the amounts "incurred" for each claim, or the amounts due for actual payments on claims and case reserves for open claims within the applicable deductible amount (*Id.*).

15.     Except for disputes as to certain claims and alleged setoffs, Simple HR does not dispute any of the insurer invoices or loss runs or the amounts due to Park Avenue for "incurred claims" (paid amounts and case reserves) (Ex. 4, Lindsley Depo. at 118:13-119:7; 120:17-121:6).

16.     Certain "open claims" at the date of receivership continued to be administered and paid by various guaranty associations (Ex. 1, Tharp Report at 6, 11-12,

---

[1] The per-claim deductible for the 2005 Agreement was $250,000, while the 2006 Agreement and the 2007 Agreement both established a $500,000 deductible.  *Id.*

and 16).   The guaranty associations set case reserves for these open claims, make payment, and settle claims (*Id.*).

17.   Based on the undisputed records of the insurer and the guaranty associations, $2,794,804.57 has been paid on claims attributable to the policies issued to Simple HR within the deductible amount (Ex. 10, Loss Run dated June 30, 2013).   The Receiver has credited $150,941.41 in payments the insurer made to a particular payee, General Insurance Managers, Inc., that the Receiver believes were improperly charged to Simple HR (Ex. 14, Affidavit of Mark D. Tharp ("Tharp Aff.") at ¶¶ 3-4; Ex. 11, July 25, 2003 Deposition of Mark D. Tharp ("Tharp 7/25 Depo.") at 140:15 – 143:9).   After allowing the credit, the amount of paid claims totals **$2,643,863.16** (Ex. 14, Tharp Aff. at ¶ 5).

18.   Additionally, the guaranty associations of Mississippi and Florida have established case reserves totaling **$409,492.65** for the two open claims (Ex. 10, Loss Run dated June 30, 2013).   The Receiver has investigated these claims with the respective guaranty associations, and the guaranty associations stand by these reserves (Ex. 11, Tharp July 25, 2013, Depo. at 294:6-296:17; 299:10-302:15).

19.   The Receiver retained an independent expert actuary, Brett Miller of Merlinos & Associates, to develop claims attributable to Simple HR and determine the amount due for "IBNR reserves" or "claims development reserves."   Pursuant Mr. Miller's uncontroverted expert report, the IBNR reserve attributable to Simple HR under the policies issued from 2005 through 2007 is **$115,703** (Ex. 12, Attachment A to the Expert Report of Brett Miller at 2).   Simple HR has not presented a qualified witness to

rebut the testimony of the Receiver's expert witness (Ex. 4, Lindsley Depo. at 152:4-9; 153:25-154:2).

20.     Simple HR has paid $1,359,326.28 for claims incurred during the terms of all policy years (Ex. 23, ITD Cash for SimpleHR as of 05-10-2012 at 5).[2]

21.     After allowing credits for all amounts paid for deductibles, there remains **$1,809,733** due for claims within the deductible.

22.     The Receiver demanded payment for unpaid premiums and unreimbursed deductibles on July 8, 2010, and September 21, 2010, respectively (Ex. 13, July 8, 2010, Letter to Bill Lindsley; Ex. 24, September, 21, 2010, Letter to Bill Lindsley).

23.     Pursuant to the 2006 Agreement and the 2007 Agreement, if payment is not received within ten (10) days of the date of an invoice, Simple HR is charged with a monthly late fee of one and one half percent (1.5%) of the required payment for each subsequent month or any fraction thereof (See Ex. 6, 2006 Agreement at 5; Ex. 7, 2007 Agreement at 5).

24.     Though premiums and deductible reimbursement were invoiced by the insurers and unpaid by Simple HR prior to receivership, the Receiver has calculated interest from a date ten (10) days after the respective amounts were demanded by the receiver, July 18, 2010 and October 1, 2010, respectively (Ex. 14, Tharp Aff. at ¶ 6). Accordingly, the interest due from Simple HR through September 4, 2013, for purposes of summary judgment only, is $ **987,147** (*Id.*).

---

[2] Simple HR does not dispute the accuracy of this summary exhibit (Ex. 4, Lindsley Depo. at 108:5-18).  Pursuant to FED. R. EVID. 1006, the underlying payment documents were made available or produced in discovery.

**SIMPLE HR'S PRIOR RELATIONSHIP WITH PACA (2003-2004)**

25.     PACA, Inc. is an Alabama corporation that, like Simple HR, formerly conducted business as a professional employer organization (Ex. 15, Deposition of Wayne Stark ("Stark Depo.") at 15:6-16:20).  Skilstaf, Inc. is an Alabama corporation that formerly conducted business as a professional employer organization (*Id.*).  Skilstaf is the parent company of PACA, and PACA was ultimately owned by Wayne Stark through an intermediary corporation (*Id.*).

26.     PACA/Skilstaf contracted with Park Avenue for the provision of workers' compensation insurance beginning in 2003 (*Id.* at 27:25-28:17).

27.     Also at the beginning of 2003, PACA/Skilstaf contracted with Simple HR to provide workers' compensation to Simple HR's client employees through policies issued to PACA/Skilstaf by Park Avenue (Ex. 16, Operating Agreement of PACA Quatro, LLC ("PACA Quatro Agreement") at 30-32).  The PACA Quatro Agreement is the only agreement between the parties that outlined the relationship between PACA and Simple HR.  (Ex. 15, Stark Depo. at 192:3-193:1; Ex. 4, Lindsley Depo. at 36:23-37:9).

28.     Pursuant to the agreement between them, PACA charged a negotiated rate of premium for Simple HR's payroll, and Simple HR agreed to reimburse PACA for claims related to Simple HR's employees up to a per-claim deductible of $25,000 (Ex. 16, PACA Quatro Agreement at 30, ¶ 7).

29.     Simple HR agreed to provide to PACA a "refundable claims deposit" equal to 100% of the first month's premium (Ex. 16, PACA Quatro Agreement at 30, ¶ 4). Simple HR made claims deposit payments to PACA/Skilstaf totaling $628,502 (Ex. 4,

9

Lindsley Depo. at 37:18-38:9).   The PACA Quatro Agreement further provided for repayment of the claims deposit in the event "the deposit balance is in excess of the reserve requirement for the open claims and within the deductible amount set by the Agreement" (Ex. 16, PACA Quatro Agreement at 30, ¶ 4).

30.     In addition to the "refundable claims deposit," Simple HR agreed to make a "Surplus Loan" to PACA in the amount of $823,903 (Ex. 17, Simple HR – PACA Surplus Loan Agreement).   The Simple HR – PACA Surplus Loan Agreement mirrored in many respects the Surplus Loans between PACA/Skilstaf and Providence Holdings, Inc. (Ex. 15, Stark Depo. at 196:9-21; CIV-09-0622-HE Dkt. Nos. 159-1, 159-2, and 159-3; CIV-09-0622-HE Dkt. Nos. 179-2, 179-3, 179-4).   PACA/Skilstaf provided $3.1 million to Providence Holdings, Inc. (*Id.*; Stark Depo. 176:7-178:20).   Park Avenue was not a party to any surplus loan agreements, including the Simple HR - PACA Surplus Loan Agreement (*Id.*).

31.     In late 2004, prior to contracting with Park Avenue for the provision of workers' compensation coverage for its employees beginning January 1, 2005, Simple HR requested a portfolio transfer assigning all liability for claims attributable to Simple HR from the policy issued to PACA to a new policy to be issued to Simple HR (Ex. 18, November 29, 2004, Letter from Randy Newman to Wayne Stark).   Simple HR further requested an assignment of the $628,502 claims deposit paid to PACA be assigned to meet Simple HR's claims collateral obligation to Park Avenue under the new policies (*Id.*).   Finally, Simple HR requested PACA assign Simple HR's $823,903 surplus loan it made to PACA (*Id.*).

10

32.     For the assignment to be effective, PACA had to agree to the assignment of the 2003 and 2004 claims portfolio, the $628,502 claims deposit, and the $823,903 surplus loan payment (Ex. 15 Stark Depo. 121:11-19; 258:10-18; Ex. 4, Lindsley Depo. 60:7-21).

33.     On January 18, 2005, Simple HR represented to Park Avenue that it reached an agreement in principal to a portfolio transfer of claim liabilities and claims deposits from PACA to PPC to fulfill Simple HR's obligations under the 2005 Agreement (Ex. 25, January 18, 2005, Letter from Lindsley to Lancaster).  Simple HR requested Park Avenue prepare the necessary documents to finalize the transfer (*Id.*).

34.     Park Avenue prepared the proposed portfolio transfer agreement, but PACA refused to consummate the transfer (Ex. 19, Email Correspondence Ratzel, Lindsley, and Wallis; Ex. 15, Stark Depo. at 125:14-126:14; 131:3-137:15; Ex. 4, Lindsley Depo. at 82:19-83:5).

35.     During the entire course of its relationship with Park Avenue, Simple HR was aware that PACA did not agree to transfer the claims portfolio or the claims deposit Simple HR provided to PACA, and on December 18, 2007, Simple HR requested intervention from Park Avenue to have PACA transfer the outstanding $623,502 claims deposit to Park Avenue for the benefit of Simple HR's claims collateral requirement (Ex. 20, December 18, 2007, Email from Bill Lindsley).

36.     In November 2007, PACA requested and subsequently received $1 million refund of the approximately $2 million it posted with Park Avenue as claims collateral (Ex. 15, Stark Depo. at 121:3-10; 143:10-146:10).  PACA did not allocate any portion of

11

the $1 million refund to Simple HR's claims deposit it paid to PACA (*Id.*). PACA will
refund Simple HR's claims collateral if and when the remaining $1 million is refunded
(*Id.*).

37.    On October 21, 2010, this Court entered judgment in favor of PACA and
against Providence Holdings, Inc. for $3.1 million PACA loaned Providence Holdings,
Inc., and the judgment was subsequently affirmed by the United States Court of Appeals
for the Tenth Circuit  (CIV-09-0622-HE Dkt. Nos. 211, 217, and 225).  Simple HR is
entitled to $823,903 from the $3.1 million judgment (Ex. 15, Stark Depo. 155:13-17).

38.    On February 15, 2011, PACA/Skilstaf and Simple HR entered into an
Assignment whereby PACA/Skilstaf assigned $1,381,391.69 of its purported claim
against the Park Avenue receivership estate (Ex. 21, February 15, 2011 Assignment).
The Assignment was executed after the Order of Liquidation was entered in the
Receivership estate.  Further, the Assignment provides as follows:

B.    It is the intention of the parties hereto that this assignment is an absolute, present, and
unconditional transfer and assignment of the Cash Collateral and Cash Collateral
Account. Notwithstanding this intent the Parties agree that if the Receiver does not
acknowledge and accept this Assignment and apply it for the use and benefit of Assignee
in the full amount of $1,381,391.69, then this Assignment shall be null and void.
Assignor hereby covenants and agrees that the foregoing Assignment is presently and
fully effective.  Assignor further covenants and agrees to execute such documentation
and provide such further support and assistance as the Receiver or Assignee determines
necessary to complete the assignment and provide the full use and benefit of the Claims
Collateral and Claims Collateral Account to Assignee.  Assignor acknowledges and
agrees that Assignee has a present, possessory, and "choate" interest in and to the Cash
Collateral and Cash Collateral Account. Assignor agrees to execute and deliver to
Assignee such UCC financing statements as may be requested by Assignee to perfect or
continue a security interest in the Cash Collateral and Cash Collateral Account.

The Receiver did not accept or acknowledge this assignment (Ex. 11, Tharp July 25, 2013, Depo. at 308:14-21).

### SIMPLE HR'S OTHER AFFIRMATIVE DEFENSES AND COUNTERCLAIMS

39.     Simple HR presented no facts to support its allegations that the Receiver breached his fiduciary duty (Ex. 4, Lindsley Depo. at 148:12-150:3).

40.     Simple HR presented no facts to support its allegation that the Receiver was negligent in processing Simple HR's proof of claim (Ex. 4, Lindsley Depo. at 150:4-18).

41.     The Receiver has produced or made available all documents from which Simple HR can conduct an accounting of monies paid (Ex. 22, The Receiver's Responses to Simple HR's Requests for Production of Documents).

### STANDARD OF REVIEW

Summary judgment is appropriate when the record demonstrates that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c); *Matlock v. Texas Life Ins. Co.*, 404 F. Supp. 2d 1307, 1310 (W.D. Okla. 2005).  When the totality of evidence could not lead a rational trier of fact to return a verdict for the nonmoving party, a court should grant summary judgment to the moving party. *Id.*; Fed. R. Civ. P. 56(e).

The moving party has the initial burden to show that there is an absence of evidence to support the nonmoving party's case.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S. Ct. 2548 (1986).  To survive a motion for summary judgment after this initial showing has been made, the nonmoving party must do more than "simply

allege that there are disputed issues of fact; rather, the party 'must set forth specific facts showing that there is a genuine issue for trial.'" Fed R. Civ. P. 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505 (1986) (emphasis in original).

"There is no issue for trial unless there is sufficient evidence favoring the nonmoving party." *Stewart v. United States*, 993 F. Supp. 840 (W.D. Okla. 1997) (citing *Anderson*, 477 U.S. at 249). Moreover, "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson*, 477 U.S. at 247-48.

Here, Simple HR can submit no evidence which demonstrates a ***genuine*** issue of ***material*** fact. Thus, the Receiver is entitled to judgment as a matter of law.

## ARGUMENTS AND AUTHORITIES

While this case involves many moving parts, Simple HR's liability under the Agreements is not questioned. Simple HR cannot question the amounts incurred for premiums and deductibles. Except with regard to alleged setoffs for amounts Simple HR paid pursuant to client agreements with PACA for provision of workers' compensation coverage in 2003 and 2004, Simple HR does not contest the payments credited to amounts due under the Agreements with Park Avenue for workers' compensation coverage under policies issued to Simple HR.

Nearly all of Simple HR's affirmative defenses and counterclaims fall on the faulty notion that Park Avenue held claims collateral and surplus loans from Simple HR. The evidence developed in this case demonstrates that whatever amounts Simple HR paid

14

to PACA for claims deposits and surplus loans – and the Court should, for purposes of this motion only, accept Simple HR's numbers, $628,502 and $823,903, respectively, as true – there is no genuine dispute that PACA was entitled to agree, and did not agree, to transfer those assets to Park Avenue for the benefit of Simple HR. Without evidence to refute the facts developed in this case, Simple HR's affirmative defenses and counterclaims fail.

Further, this Court has already determined that events prior to the receivership of Park Avenue triggered a repayment obligation from Providence Holdings, Inc. to PACA. This is the law of the case. There is no genuine dispute that whatever monies Simple HR paid to PACA under those parties' surplus loan agreement was intended to be part of the $3.1 million PACA/Skilstaf provided to Providence Holdings, Inc. under the very surplus loans at issue in that aspect of the case.

### A. THE RECEIVER'S BREACH OF CONTRACT CLAIMS

"In order to prove a breach of contract, a plaintiff must prove three (3) elements: 1) formation of a contract, 2) breach of the contract; and 3) actual damages suffered from the breach." *Coen v. SemGroup Energy Partners, G.P., L.L.C.*, 2013 OK CIV APP 75, ¶32; *Digital Design Group, Inc. v. Information Builders, Inc.*, 2001 OK 21, ¶ 33, 24 P.3d 834, 843. There is no genuine dispute as to any element of the Receiver's claim.

Simple HR entered into three separate contracts for the provision of workers' compensation insurance coverage (Statement of Undisputed Material Facts No. 5).

Park Avenue issued policies and provided coverage for Simple HR employees and invoiced Simple HR for premiums and deductible payments (Statement of Undisputed

Material Facts Nos. 8-11, 13-15).  When Park Avenue went into receivership, guaranty associations of various states continued to administer, pay, and set reserves on open claims incurred during the policy periods (Statement of Undisputed Material Facts No. 16).  The Receiver retained an actuary to determine the amount due for "IBNR Reserves" or "claims development reserves" pursuant to the Agreements between the parties (Statement of Undisputed Material Facts No.19).

The Receiver demanded payment for unpaid premiums and deductibles, but Simple HR has failed to remit the same, and the receivership estate is damaged in the principal amount of **$1,833,071** (Statement of Undisputed Material Facts Nos.9-10; 17-21).  Interest accrued and remains accruing at the annual rate of 18% for a total of **$987,147** as of September 4, 2013 (Statement of Undisputed Material Facts Nos. 22-24).

The guaranty associations of the various states administer outstanding or "open" workers' compensation claims incurred prior to cancellation of the policies, which occurs in connection with an order of liquidation of an insurance company (Statement of Undisputed Material Facts Nos. 16-18).  In addition to making payments on claims, the guaranty associations set case reserves on open claims (*Id.*).  The two guaranty associations administering the remaining open claims have established reserves, collectively, of $409,492.65 (*Id.*).  The determinations of the guaranty associations are binding.  OKLA. STAT. tit. 36, § 2010(C) provides, in relevant part, as follows:

> The receiver, liquidator or statutory successor of an insolvent insurer shall be bound by settlements of covered claims by the Association or a similar organization in another state.

*Id.*  Further, subsection (D) provides as follows:

> The Association shall periodically file with the receiver or liquidator of the insolvent insurer statements of the covered claims paid by the Association and estimates of anticipated claims on the Association which shall preserve the rights of the Association against the assets of the insolvent insurer.

OKLA. STAT. tit. 36, § 2010(D).

The Receiver is not entitled to so challenge the settlements, reserve calculations, and payments of the guaranty associations, and the statements filed by the guaranty associations, including case reserves, are all that is needed to preserve a claim of the guaranty association for the amounts so stated. *Id.* It stands to reason that Simple HR is also bound by the settlements of the guaranty association or the reserves on open claims up to the per-claim deductible. To hold otherwise would obligate the Receiver to pay the full amount of the claims submitted by the guaranty associations, but only recover a portion of the claim paid from Simple HR within its deductible. This interpretation would frustrate the purpose of the act and allow preferential treatment for Simple HR and a smaller liquidation dividend to Park Avenue's general creditors. See *Skandia Am. Reinsurance Corp. v. Schenck*, 441 F. Supp. 715, 727-728 (S.D.N.Y. 1977) (citing New Jersey's version of section OKLA. STAT. tit. 36, § 2010 in recognizing the equitable nature of liquidation proceedings to avoid preferences that would provide smaller liquidation dividends to the insolvent insurers other creditors).

The Receiver is entitled to judgment on its breach of contract claims as a matter of law.

### B. SIMPLE HR'S ALLEGED SETOFFS

Simple HR seeks an offset for the $628,502 in claims deposits it provided to

PACA pursuant to an agreement between those parties and the $823,903 it loaned to PACA under a separate surplus loan agreement.  In support of its position, Simple HR will rely heavily <u>and solely</u> upon language contained in the 2006 Agreement.  For context, the language of the 2005 Agreement should be reviewed first.  Prior to executing the 2005 Agreement, Simple HR requested PACA transfer all 2003 and 2004 claims liabilities attributable to Simple HR employees as well as the claims deposit and surplus loan monies (Statement of Undisputed Material Facts No. 31).  The subsequent 2005 Agreement states, in relevant part, as follows:

> <u>Surplus</u>: Simple HR agrees to loan 17.5% of Manual Premium Providence [sic] Holdings, Inc., owner of Providence Property & Casualty Insurance Company, as a Surplus Note <u>or</u> [sic] purchase Preferred Stock issued by Providence Holdings, Inc.
>
> The Surplus payment ***will be considered paid as long as Simple HR as the $823,903.00 with Skilstaf***.  If Skilstaf pays the $823,903.00 to Simple HR, Simple HR must pay the funds to Providence Holdings, Inc.  If Skilstaf will assign a Note for $823,903.00 to Simple HR, then Simple HR will assign the total amount to Providence Holdings, Inc.
>
> <u>Claims Collateral</u>: The Claims Collateral will be $250,000.00 with $50,000 Payable at closing and $50,000 payable per month until the $250,000 is paid.
>
> If ***Simple HR's claims payable through SkilStaf's policy are transferred to the Providence Property & Casualty Insurance Company Simple HR policy (along with Claims Collateral)***, the excess amount, if any, will be used to satisfy Simple HR's Claims Collateral with Providence Property & Casualty Insurance Company.  Based on the attached Trend Costs Schedule, it appears the Total Trend Cost is $275,773.  Based on this assumption, ***there is more than adequate collateral being held by Skilstaf***.

(Ex. __, 2005 Agreement at 3) (emphasis added).

Shortly thereafter, Simple HR announced an "agreement in principal" with PACA

to transfer 2003 and 2004 claims liabilities, and claims deposits shortly after the effective date of the 2005 Agreement, and requested that Park Avenue prepare the necessary documents to finalize the transaction (Statement of Undisputed Material Facts No. 33). However, Simple HR was not able to obtain the necessary agreement from PACA to accomplish this or any other transfer (Statement of Undisputed Material Facts Nos. 32, 34).

The subsequent 2006 Agreement declared, in relevant part, as follows:

> Claims Collateral
> You will maintain Claims Collateral on deposit with Us equal to 25% of the Manual Premium as in effect from time to time. Currently, the required amount of Claims Collateral is $875,000 based on a current estimated Manual Premium of $3,500,000 (the "Current Estimated Manual Premium Amount"). ***We currently hold $628,205 in Claims Collateral***. At this time, we will not require any additional collateral.

(Ex. __, 2006 Agreement at 3-4) (emphasis added). No declarations or obligations were made with respect to the surplus note holdings or requirements. The 2007 Agreement similarly declared, in relevant part, as follows:

> Claims Collateral
> You will maintain Claims Collateral on deposit with Us equal to 25% of the Manual Premium as in effect from time to time. Currently, the required amount of the Claims Collateral is $700,000 based on a current estimated Manual Premium of $2,800,000 (the "Current Estimated Manual Premium Amount"). ***We will not request any additional Claims Collateral at this time***.

(Ex. __, 2007 Agreement at 3) (emphasis added). Again, no declarations or obligations regarding surplus loan holdings or requirements were contained in the 2007 Agreement.

While the 2006 Agreement declared that Park Avenue held claims collateral, Simple HR and PACA, the parties to the putative agreement to transfer collateral, knew

19

that no agreement was made to transfer claims deposits held by PACA to Simple HR (Statement of Undisputed Material Facts Nos. 32, 34, and 35).

Additionally, this is not a material term of the contract for which enforcement is sought. The statement, "We currently hold $628,205 in Claims Collateral," is in the nature of a recital, rather than an operative clause. "As a general rule, recitals in a contract will not control the operative clauses thereof unless the latter are ambiguous; but they may be looked to in determining the proper construction of the contract and the parties' intention." *McKissick v. Yuen*, 618 F.3d 1177, 1186 (10th Cir. 2010) (quoting *Ferrell Constr. Co. v. Russell Creek Coal Co.*, 1982 OK 24, 645 P.2d 1005, 1009). "Recital clauses in a contract generally do not constitute a covenant or a contractual commitment." *Id.* The recital here reflects the parties' intention to waive Simple HR's obligation to post claims collateral. The Receiver does not seek collateral; the Receiver seeks recovery for all premiums and deductibles owed. The recital, while ultimately incorrect, was not a covenant or contractual commitment. Moreover, Simple HR cannot claim to be harmed when it knew the recital was incorrect (Statement of Undisputed Material Facts Nos. 32, 34, and 35).

Simple HR's claim for a setoff on the $823,903 surplus loan it provided to PACA lacks all merit. Simple HR can present no evidence that its loan was assigned to Park Avenue. Its remedy lies against PACA. If Simple HR can demonstrate its loan monies were included in the amounts PACA/Skilstaf loaned to Providence Holdings, Inc., the Court has already determined Providence Holdings, Inc. is liable (CIV-09-0622-HE Dkt. No. 211). Pursuant to the Court's Order, the 2005 cancellation of certain surplus

certificates loans Providence Holdings, Inc. provided to Park Avenue resulted in a conversion from a loan to paid-in capital, which triggered the obligation of Providence Holdings, Inc. to pay PACA (*Id.*).   Further, the stock purchase agreement required Providence Holdings, Inc. to settle all indebtedness the insurer owed to Providence Holding, Inc., which also triggered the repayment obligation (*Id.*).   The Court's decision was affirmed by the Tenth Circuit.   (CIV-09-0622-HE Dkt. No. 225).   This is the law of the case.   "[W]hen a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case[.]"   *Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1516 (10th Cir. 1991) (citations omitted).

On February 15, 2011, Simple HR and PACA finally entered into an agreement to assign "Claims Collateral" in the amount of $1,381,391.69 from PACA to Simple HR (Statement of Undisputed Material Facts No. 38).   Pursuant to its own terms, the February 15, 2011, Assignment is null and void if not accepted by the Receiver (*Id.*). The Receiver rejected the assignment (*Id.*).   Moreover, even if PACA had an offset to assign – which the Court, for purposes of this Motion for Summary Judgment only, should assume – the Receiver has no discretion to allow the Assignment, as it constitutes a prohibited transfer of an offset pursuant to OKLA. STAT. tit. 36 § 1928, which provides as follows:

> A. In all cases of mutual debts or mutual credits between the insurer and another person, whether arising out of one or more contracts between the insurer and another person, in connection with any action or proceeding under this article, such credits and debts shall be offset and the balance only shall be allowed or paid, except as provided in subsection B of this section.

B. *No offset shall be allowed if*:

1. The obligation of the insurer would not, at the date of the entry of any liquidation order or otherwise as provided in Section 1925 of this title, entitle the claimant to share in the assets of the insurer;

2. *The obligation of the insurer was purchased by or transferred to the claimant to be used as an offset*;

3. The obligation is to pay an assessment levied against the members of a mutual insurer, or against the subscribers of a reciprocal insurer, or to pay a balance upon the subscription to the capital stock of a stock insurer;

4. The obligation of the insurer is owed to an affiliate of such person, or any other entity or association other than the person;

5. The obligation of the person is owed to an affiliate of the insurer, or any other entity or association other than the insurer; or

6. The obligation between the person and the insurer arises from business where either the person or the insurer has assumed risks and obligations from the other party and then has ceded back to that party substantially the same risks and obligations.

*Id.* (emphasis added).   Assuming Park Avenue had an obligation to PACA, PACA transferred the obligation to Simple HR to be used as an offset.  Pursuant to § 1928, the offset must be rejected.

## C. SIMPLE HR'S MISCELLANEOUS COUNTERCLAIMS AND AFFIRMATIVE DEFENSES

Simple HR asserts various claims, counterclaims, and affirmative defenses all premised on its entitlement to the $628,502 claims deposit and $823,903 surplus loan it provided to PACA (*See, e.g.* 12-cv-00457 Dkt. No. 13 at 6-11, ¶¶ 37 – 42, 44-48; 18, ¶¶ 26-30).  Because there was no assignment of these monies from PACA to Park Avenue, these claims all must fail.

Further, Simple HR can provide no evidence to support its claims of breach of fiduciary duty and negligence against the Receiver (Statement of Undisputed Material Facts Nos. 39-40).   A 30(b)(6) notice to take deposition triggers several distinct obligations on the part of the corporation that is to be deposed.  First, the corporation "has a duty of being knowledgeable on the subject matter identified as the area of inquiry." *Alexander v. Federal Bureau of Investigation,* **186 F.R.D. 148**, 151 (D.D.C. 1999). Second, the corporation is required to designate one or more deponents to respond to the "relevant areas of inquiry" as specified by the examining party.  *Id*.   Third, the corporation "has a duty to prepare the witness to testify on matters not only known by the deponent, *but those that should be reasonably known by the designating party*." *Alexander*, supra, at 151 (emphasis added); *see also, Mitsui & Co. (USA), Inc., v. Puerto Rico Water Resources Auth.,* 93 F.R.D. 62, 66-6 (D.P.R. 181).

"Obviously, the purpose of a Rule 30(b)(6) deposition is to get answers on the subject matter described with reasonable particularity by the opposing party, not to simply get answers limited to what the deponent happens to know." *Alexander*, supra, at 151.  "Clearly, a deponent that does not know about the subject matter to be inquired about is useless as a deponent…" *Alexander v. Federal Bureau of Investigation,* **186 F.R.D. 137**, 141 (D.D.C. 1999).

It is equally clear that if, during the course of the deposition, the designated deponent demonstrates an inability to provide testimony that is responsive to the notice, the corporation must immediately step forward and offer up another designee. *Marker v. Union Fidelity Life Ins. Co.,* 125 F.R.D. at 151.

*United States v. Taylor,* 166 F.R.D. 356 (M.D. N.C. 1996) contains an excellent discussion of the purpose for Rule 30(b)(6), to obligations imposed by the Rule, and the effect on a corporation such as Defendant who choose to submit its designee unprepared to provide meaningful and substantive information on the designated subject matters. *See also Rainey v. American Forest & Paper Ass'n, Inc.,* 26 F.Supp.2d 82, 94-96 (D.D.C. 1998) (corporation that could not provide information at deposition prevented from supplying additional information in response to motion for summary judgment).

Attached as Exhibit 27 is an Order entered by Judge Ronald A. White on May 27, 2004 in a case pending in the United States District Court for the Eastern District of Oklahoma. On pages 3 through 5 of the Order, Judge White addresses the obligations of a corporate party to provide the best factual information available at a 30(b)(6) deposition and the consequences of a party who elects not to provide substantive complete responsive information at a 30(b)(6) deposition.

Because Simple HR did not provide a representative to provide evidence in support of its breach of fiduciary duty and negligence claims against the Receiver, Simple HR should not be permitted to advance evidence now, in response to a motion for summary judgment. *Rainey*, 26 F. Supp. at 94-96. Accordingly these claims fail.[3]

Simple HR's claim for an equitable accounting must fail as well. Simple HR requested and was provided a full opportunity to review the accounting during discovery

---

[3] The same principal should apply to any challenge to the 2007 Final Premium Audit. Simple HR had an opportunity to present its challenge to the premium calculation at the 30(b)(6) deposition and failed to do so or designate another representative (Statement of Undisputed Material Facts Nos. 9-10).

in this case (Statement of Undisputed Material Facts No. 41).  Further, Simple HR agrees with the paid losses within the deductible, premium charges, and the amounts credited to Simple HR for premiums and deductibles (Statement of Undisputed Material Facts Nos. 8, 15, and 20).

All of Simple HR's claims, affirmative defenses, and counterclaims fail, and the Receiver is entitled to summary judgment.

## CONCLUSION

For all of the foregoing reasons, the Receiver requests the Court grant his Motion for Summary Judgment on all claims and defenses at issue.  Alternatively, the Receiver requests summary judgment on any claim or defense for which the Receiver is entitled, thus narrowing the issues to be addressed at trial.  The Receiver further requests the Court provide such other and further relief that the Court determines just and proper.

Respectfully submitted,

**NEWTON, O'CONNOR, TURNER & KETCHUM, P.C.**

*/s/ Gregory P. Reilly*
John M. O'Connor, OBA No. 6741
Patrick H. Kernan, OBA #4983
Gregory P. Reilly, OBA No. 22284
15 West Sixth Street, Suite 2700
Tulsa, Oklahoma   74119-5423
Telephone: 918-587-0101
Facsimile: 918-587-0102

**ATTORNEYS FOR PLAINTIFF, STATE OF OKLAHOMA, ex rel. JOHN DOAK, INSURANCE COMMISSIONER**

<u>**CERTIFICATE OF SERVICE**</u>

This is to certify that on this 4th day of September, 2013, a true and correct copy of the above and foregoing document was filed and served via the Court's CM/ECF system to:

    Robert C. Byerts, Esq.
    Andrew Paul Speicher, Esq.
    Brannon Jeffrey Buck, Esq.
    Brian E. Dittrich, Esq.
    Christopher B. Keim, Esq.
    Eric L. Johnson, Esq.
    Kenneth A. Tillotson, Esq.
    Kevin D. Gordon, Esq.

                        /s/ *Gregory P. Reilly*
                       Gregory P. Reilly

27